# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO:  19-199** |
| **KENNIE SANTOS-PAYANO** | **SECTION: "S" (1)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that defendant Kennie Santos-Payano's **Motion to Suppress** (Rec. Doc. 19) is **DENIED**.

## BACKGROUND

This matter is before the court on a motion to suppress filed by defendant, Kennie Santos-Payano. Santos-Payano argues that the evidence obtained during a traffic stop in St. Tammany Parish, Louisiana on September 25, 2019, should be excluded because it is the fruit of an unlawful search of his vehicle.

On October 3, 2019, a grand jury in the Eastern District of Louisiana returned a single count indictment which alleged:

> On or about September 25, 2019, in the Eastern District of Louisiana, the defendant, **KENNIE SANTOS- PAYANO** did knowingly and intentionally possess with intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine hydrochloride, a Schedule II drug controlled substance, in violation of Title 21, United States Code Sections 841(a)(1) and (b)(1)(1).

This count involves the drugs seized from Santos-Payano's rental vehicle on September 25, 2019. Santos-Payano argues this evidence should be suppressed because the search of his vehicle

and seizure of the evidence performed on that date was improper. In connection with the motion, the government has submitted the videotaped recordings from the body and dashboard camera of Trooper Donovan. Counsel for both the government and the defendant have informed the court that an evidentiary hearing is not necessary.[1]

On September 25, 2019, Louisiana State Police Trooper Charles Donovan stopped Santos-Payano's vehicle for improper lane usage, after he observed him striking rumble strips on the highway. The video evidence in this case shows that Trooper Donovan approached Santos-Payano's vehicle, which was parked very close to the highway, from the passenger side. He instructed Santos-Payano to move his car further into the shoulder and away from the traffic lanes. Santos-Payano then got of the driver's side and approached Trooper Donovan, who was also getting out of his vehicle. Trooper Donovan introduced himself to Santos-Payano and asked him where he was from. Santos-Payano stated that he was from Florida, but in response to further questioning, stated that he was originally from Puerto Rico. Trooper Donovan asked him to produce his driver's license. Santos-Payano asked why he had been stopped. Trooper Donovan told him why, and Santos-Payano stated that he had veered out of his lane in an effort to allow maximum space for Trooper Donovan who was parked on the shoulder. Trooper Donovan

---

[1] Santos-Payano's prior attorney requested an evidentiary hearing in the event the court was inclined to deny the motion to suppress. Subsequently, new defense counsel was substituted, who informed the court that an evidentiary hearing was not necessary, considering that the court has the body and dash-cam video of the stop. The government's attorney took the same position, and both waived oral argument. Accordingly, this matter has been submitted on the memoranda of counsel.

responded that he pulled Santos-Payano over when he hit the rumble strips out of concern that he was impaired or tired.

Santos-Payano produced the rental paperwork for the car. Trooper Donovan asked where he was coming from, and he responded "Louisiana," where he had been visiting "a girl," but he not know her address. He further stated that he had left Kissimmee, Florida two days prior to meet the girl, whom he had met on Facebook. He stated that they had met in "Hampton," which Trooper Donovan ultimately deduced was Hammond, Louisiana. When asked the name of the hotel where he had stayed, Santos-Payano stalled and struggled to recall, eventually equivocally mentioning Motel 6. He stated that he had collected the car from the Orlando airport, that he was two days late in returning it, and acknowledged that he had no luggage or clothes beyond those he was wearing. As the interview progressed, Santos-Payano increasingly fidgeted with his clothing, and repeatedly put his hands in and out of his pockets despite an early directive from Trooper Donovan to keep his hands visible for safety reasons.

Trooper Donovan then returned to his patrol car and provided dispatch with Santos-Payano's driver's license information to conduct a driver's license and criminal history check. While in his patrol car, Trooper Donovan also completed a consent to search form for the vehicle. Trooper Donovan then got out of his car and asked Santos-Payano if he was responsible for everything in the car, to which Santos replied, "no." When asked if anyone asked him to transport anything illegal in his car, Santos replied that he did not want the trooper to search his car. Santos refused consent to search his car. At this point, Trooper Donovan asked a second

trooper, who had arrived minutes previously, to assist, and to have K-9 "Tessa" conduct an open air sniff of the exterior of Santos-Payano's car. During the open air sniff, Santos-Payano became agitated, verbally combative, and loud. Dispatch notified Trooper Donovan that Santos's driver's license was in good standing.

The video shows Tessa jumping up and lunging at the car several times, and the K-9 handler informed Trooper Donovan that Tessa had alerted to the presence of drugs in the car. Following the K-9 alert, a third trooper searched the vehicle and located two boxes in the back seat of the vehicle. Both boxes contained several brick-like packages which later were determined to be 8.5 kilograms of cocaine. Santos-Payano was arrested for possession with intent to distribute cocaine and transported to the police station.

## DISCUSSION

The Fourth Amendment to the Constitution of the United States protects individuals from unreasonable searches and seizures:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. Although the Fourth Amendment is silent on the suppression of evidence obtained in violation thereof, the prudential "exclusionary" rule may be used to suppress evidence where doing so would "deter future Fourth Amendment violations." Davis v. United States, 564 U.S. 236-37 (2011). "The exclusionary rule prohibits introduction at trial of

evidence obtained as the result of an illegal search or seizure [and] excludes not only the illegally obtained evidence itself, but also other incriminating evidence derived from that primary evidence." United States v. Runyan, 275 F.3d 449, 466 (5th Cir. 2001) (citing Silverthorne Lumber Co. v. United States, 251 U.S. 385 (1920)). Further, "the exclusionary rule encompass[es] evidence that is the indirect product or 'fruit' of the unlawful police conduct." Id. (citing Wong Sun v. United States, 371 U.S. 471 (1963)).

Traffic stops are seizures for the purpose of the Fourth Amendment. United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir. 2005). An officer can stop a vehicle when he has "'probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations.'" Whren v. United States, 517 U.S. 806, 817(1996) (quoting Delaware v. Prouse, 440 U.S. 648, 659 (1979)). Prouse "noted approvingly that the foremost method of enforcing traffic and vehicle safety regulations . . . is acting upon observed violations, which afford the 'quantum of individualized suspicion' necessary to ensure that police discretion is sufficiently constrained." Id. (internal quotations and citations omitted).

"The legality of a traffic stop is analyzed under the framework articulated in Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed.2d 889 (1968)." Lopez–Moreno, 420 F.3d at 430. Under the two-part Terry test, "[t]he court must evaluate (1) whether the officer's action was "justified at its inception," and (2) whether the officer's subsequent actions were "reasonably related in scope to the circumstances which justified the interference in the first place." Id.

**A.    Whether the Officer's Actions were Justified at the Inception of the Stop**

In this case, Trooper Donovan's stopping of Santos-Payano was justified at its inception because Trooper Donovan observed Santos-Payano violating a traffic law. While Santos-Payano argues that the stop was invalid because he veered across the rumble strips merely to give space to Trooper Donovan's parked vehicle, he acknowledges that he did cross the rumble strips. Trooper Donovan pulled Santos-Payano over after he observed Santos-Payano cross the rumble strips in violation of La. R.S. 32:79, improper lane usage, and explained to him that he did so out of concern that he was impaired or drowsy. Therefore, the initial stop was justified.

**B.    Whether the Officer's Subsequent Actions were Reasonably Related in Scope to the Circumstances which Justified the Interference in the First Place**

Santos-Payano argues that even if Tooper Donovan observed a traffic violation that justified the initial stop, once the purpose of the initial stop was concluded, instead of issuing a citation, Trooper Donovan improperly prolonged the detention, in a manner that exceeded the scope of the initial stop and thus fails the second prong of <u>Terry</u>. Specifically, Santos-Payano contends that when Trooper Donovan returned to his vehicle to prepare various forms, including a consent to search the vehicle, while waiting for a K-9 officer to clear from his previous assignment and to arrive at the scene of the traffic stop, he created a delay that exceeded the necessary time to determine whether there were any safety issues.

An officer's subsequent actions are not considered reasonably related in scope to the circumstances which justified the interference in the first place, if he detains a vehicle's

occupants beyond the time needed to investigate the circumstances that caused the stop, unless

he develops reasonable suspicion of additional criminal activity in the meantime. United States

v. Pack, 612 F.3d 341, 350 (5th Cir.), opinion modified on denial of reh'g, 622 F.3d 383 (5th Cir.

2010). However, "[i]f the officer develops reasonable suspicion of additional criminal activity

during his investigation of the circumstances that originally caused the stop, he may further

detain its occupants for a reasonable time while appropriately attempting to dispel this

reasonable suspicion." Id. Moreover, police may not routinely "extend an otherwise-completed

traffic stop, **absent reasonable suspicion**, in order to conduct a dog sniff." Rodriguez v. United

States, 575 U.S. 348, 353 (2015)(emphasis added).

"Reasonable suspicion 'exists when the detaining officer can point to specific and

articulable facts that, when taken together with rational inference from those facts, reasonably

warrant the search and seizure.'" Pack, 612 F.3d at 352 (quoting United States v. Estrada, 459

F.3d 627, 631 (5th Cir.2006). Reasonable suspicion is evaluated by examining the totality of the

circumstances of the case to determine "whether the detaining officer ha[d] a particularized and

objective basis for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273

(2002) (citations omitted). "This process allows officer to draw on their own experience and

specialized training to make inferences from and deductions about the cumulative information

available to them that might well elude an untrained person." Id. (citations and quotations

omitted).

"Reasonable suspicion must be based on more than the officer's sense that a detainee

7

appears to have something to hide."  United States v. Cavitt, 550 F.3d 430, 437 (5th Cir. 2008).

Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of

criminal activity need not rise to the level required for probable cause, and it falls considerably

short of satisfying a preponderance of the evidence standard." Arvizu, 534 U.S. at 274 (citations

omitted).

As an example, the Fifth Circuit has held that a defendant's extreme nervousness,

implausible story, and the fact that he was traveling along a drug trafficking corridor were

enough for a law enforcement officer with seventeen years of experience to form a reasonable

suspicion of criminal activity during a traffic stop. Pack, 612 F.3d at 361. Under these

circumstances, the Pack court found it reasonable for the officer to call in a canine unit to resolve

his suspicion after the defendant refused consent to search the vehicle. Id.

In this case, during the complained of delay, Trooper Donovan was awaiting results from

dispatch regarding Santos-Payano's license and criminal background check. The video evidence

confirms that even before Trooper Donovan retired to his vehicle to await a response from

dispatch, Santos-Payano could not correctly identify the city he had been visiting, did not know

the address of the person he claimed to be visiting, and was uncertain of where he had stayed

while there. He had no luggage or even a change of clothes with him. As the interview

progressed, Santos-Payano betrayed increasing nervousness, fidgeting and placing his hands in

and out of his pockets, scratching himself, and adjusting his clothing. Thus, under the totality of

the circumstances, articulable facts were present that would permit Trooper Donovan to

8

conclude that there was a reasonable suspicion that criminal conduct was afoot. This impression was heightened when, after Trooper Donovan emerged from his vehicle, Santos-Payano stated that he was not personally responsible for the contents of the car. Trooper Donovan was thus justified in calling in a canine unit to resolve his suspicions after Santos-Payano refused permission to search the vehicle.

In sum, the court finds that the initial stop was valid, and that subsequent facts enabled Trooper Donovan to develop "reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop," and he was therefore justified in further detaining Sanos-Payano "for a reasonable time while appropriately attempting to dispel this reasonable suspicion." Pack, 612 F.3d at 350. Accordingly, the government has carried its burden of establishing circumstances that justify a warrantless search, and Santos-Payano's motion to suppress is denied. Therefore,

**IT IS HEREBY ORDERED** that defendant Kennie Santos-Payano's **Motion to Suppress** (Rec. Doc. 19) is **DENIED**.

New Orleans, Louisiana, this ___8th___ day of May, 2020.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

9